J. Ashlee Albies  OSB #051846
ALBIES AND STARK, LLC
Maya Rinta  OSB #195052
1 S.W. Columbia St., Ste. 1850
Portland, OR 97204
Tel:  503.308.4770
Fax:  503.427.9292
E-mail:  ashlee@albiesstark.com
E-mail: maya@albiesstark.com
Of Attorneys for Plaintiff

James E. McCandlish    OSB #75246
GRIFFIN & McCANDLISH
1000 S.W. Broadway, Ste. 2400
Portland, OR 97205
Tel:  503.206.8437; Fax: 224.9201
E-mail: jmccandlish@comcast.net
Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ERIK HOOFNAGLE, | 3:20-cv-01657-AC |
| Plaintiff, | AMENDED COMPLAINT |
| vs. | (1st and 4th Amendment Civil Rights Violations; TRO Violation; Oregon Common Law Claims; Damages and Attorney Fees) |
| BRENT M. TAYLOR, an individual; CITY OF PORTLAND, a municipal corporation; SGT. KYLE SMITH, an individual; MULTNOMAH COUNTY, a political subdivision of the State of Oregon, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## I

## INTRODUCTION

1.     On Independence Day, July 4th, 2020, Plaintiff Erik Hoofnagle ("Hoofnagle"), was a peaceful protestor in downtown Portland demonstrating in support of the Black Lives

Matter movement.  The Black Lives Matter movement challenges police violence towards Black community members.  While Hoofnagle was peacefully protesting, defendant Portland Police Officer Brent Taylor ("Taylor") shot him multiple times with FN 303 projectiles. Defendant Multnomah County Sheriff's Deputy Kyle Smith also shot him one time with a more powerful 40 mm projectile causing a deep thigh flesh wound.  Hoofnagle had 14 separate wounds caused by these two grenadiers, and perhaps others. -Taylor then demonstrably lied about the circumstances to cover up the lack of probable cause to batter, arrest, incarcerate and charge Hoofnagle with criminal activity.

2.      Plaintiff alleges federal claims pursuant to 42 USC § 1983, as guaranteed by the 14th Amendment to the U.S. Constitution for (1) Violation of his First Amendment rights of free speech and peaceful protest; and (2) Violation of his 4th Amendment rights to be free of excessive force and wrongful arrest by Portland police officers.

3.      Hoofnagle further alleges that defendants were aware of the terms of the Joint Stipulated Temporary Restraining Order issued by the Honorable Marco Hernandez in *Don't Shoot Portland, et.al. v. City of Portland,* No. 3:20-cv-00917-HZ, and violated it nonetheless.

4.      Plaintiff also seeks to invoke this Court's supplemental jurisdiction for relief under state law claims for Assault and Battery, Intentional Infliction of Emotional Distress and Wrongful Arrest, all of which are a part of the same event.

5.      Plaintiff seeks awards of economic damages, non-economic damages, attorney fees and litigation expenses/costs against defendants.  Plaintiff also seeks an award of punitive damages against the individual defendants under federal law.

//////////

//////////

## II

## JURISDICTION

6.    This court has jurisdiction over plaintiff's claims by virtue of 28 USC §§ 1331, 1343, and 1367.

## III

## PARTIES

7.    Hoofnagle is an Oregon resident.

8.    Defendant Taylor is a Portland Police Officer assigned to the Rapid Response Team ("RRT") as a Grenadier.  At all material times, Taylor was acting within the course and scope of his employment.

9.    Defendant City of Portland is a municipal corporation in the State of Oregon and Taylor's employer.

10(a).  Defendant Smith is a Sergeant in the Multnomah County Sheriff's Office assigned to the Sheriff's RRT as a Grenadier.  At all material times, Smith was acting within the course and scope of his employment.

10(b).  Defendant Multnomah County is a political subdivision of the State of Oregon. At all material times, Smith was acting within the course and scope of his employment.

## IV

## FACTS

11.    In support of the Black Lives Matter movement, members of the Portland community have come out in protest of police violence disproportionately directed at Black people, Indigenous people and people of Color. While this is a national movement, it is extremely relevant in Portland, as data shows Portland Police Bureau's use of force, traffic stops,

searches, seizures and arrests are disproportionately directed at Black, Indigenous, and community members of Color as compared to their white counterparts.

12.    On June 26, 2020, in the case *Don't Shoot Portland, et. al. v. City of Portland*, *et. al.*, Case No. 3:20-cv-00917-HZ, Chief Judge Marco Hernandez entered a Stipulated Additional Temporary Restraining Order that restricted Portland Police Bureau's use of "less lethal" weapons in crowd settings in the following manner:  "FN303s and 40MM less lethal launchers with or without OC payload are limited to use as outlined in PPB Use of Force Directive 1010, and in addition shall not be used where people engaged in passive resistance are likely to be subjected to the force." *See* Dkt #43.  Upon information and belief, this order was disseminated and explained to the RRT prior to July 4, 2020.

13.    Shortly before midnight on July 4th, 2020, Taylor and Smith were walking in a line of approximately a dozen or more RRT police who were northbound on SW 4th Avenue, approaching the intersection with SW Washington Street.   The RRT squad members were directing the protestors in front of them, who were retreating as directed, northbound on SW 4th. The squad members were outfitted in full riot gear, including gas masks, shields and full protective gear.  The police had announced by loudspeaker that a riot had been declared, and all protestors were to clear the area.  Hoofnagle was walking northbound on SW 4th Avenue in compliance with the order to clear, approximately 20 to 30 feet ahead of the RRT line.  He was just entering the intersection with SW Washington on the westerly side of 4th when one of the officers rolled a smoking, sparking and flaming canister of chemicals past Hoofnagle on his right side.  Hoofnagle continued walking northbound for a few seconds until he reached the canister, and turned to kick the canister towards the middle of the intersection away from the scattering protestors, including a then unknown videographer filming the entire incident.  After kicking the

canister, Hoofnagle took approximately two steps backwards continuing his retreat as instructed. At that point, Taylor shot Hoofnagle multiple times creating thirteen separate wounds with FN 303 projectiles, causing injuries to all of Hoofnagle's extremities and his upper back, including a broken or severely damaged right knee cap.  Smith also shot him one time without cause as he was beginning to retreat with a more powerful 40 mm projectile causing a deep thigh flesh wound.

14.      After being repeatedly struck, Hoofnagle tried to get up as he thought he was supposed to keep moving northbound on 4th as instructed.  While on one knee but before he was able to get both knees off the ground, he was bull-rushed by multiple RRT squad members; and Taylor threw him harshly to the pavement.  Hoofnagle did not resist arrest.

15.      After Hoofnagle was arrested, PPB transported him to jail in handcuffs.  He was incarcerated until his release the next morning.  Hoofnagle was charged with Interfering with a Police Officer (Class A Misdemeanor); Riot (C Felony) and Disorderly Conduct II (B Misdemeanor).

16.      Taylor wrote a police report (GO 42 2020-680877) in which he lied or deliberately distorted the facts to cover up the lack of probable cause for Hoofnagle's arrest, and to justify his use of excessive force.  More specifically, Taylor made the following misrepresentations, which were demonstrably contradicted by the independent video of the entire incident and physical evidence:

a.  Taylor wrote that Hoofnagle picked up the canister and threw it at the RRT line, a tactic Taylor states he knew was used by protestors to harm police.  The video clearly establishes that plaintiff did no such thing.  Taylor thus falsely implied Hoofnagle intended to, and had in fact taken action to harm a police officer with physical force;

b.    Taylor wrote that he shot Hoofnagle only in the lower extremities.  In fact, Taylor also shot Hoofnagle in the shoulder blade areas and upper arms; the latter locations in violation of PPB's use of force policy.  Taylor attempted to cover this up in the Force Data Collection Report by placing "x's" demarcating the points of impact only on the lower extremities in the human figures;

c.    Taylor wrote that the projectile rounds he fired were back loaded with paint to later identify the protestor hit by the projectiles.  In fact, only two out of the fourteen areas of Hoofnagle's clothing and wounds contained paint residue.

17.    Because Taylor used force in the arrest, he was required to complete the Force Data Collection Report, as mentioned above.  The section of that Report, titled "Use of Force was Necessary to" lists five categories of justification.  In reliance on his falsehoods, Taylor checked off the following boxes:  "PREVENT OR TERMINATE THE COMMISSION OF AN OFFENSE"; "DEFEND THE MEMBER OR OTHER PERSON FROM THE USE OF FORCE"; and "ACCOMPLISH SOME OFFICIAL PURPOSE OR DUTY THAT IS AUTHORIZED BY LAW OR JUDICIAL DECREE".

18.    On information and belief, Taylor's false report was reviewed and ratified in the regular course by Taylor's immediate superior officer and possibly higher ranking PPB members.

19.    Taylor's superior(s) in the regular course of the arrest and ratification of charges referred the case through channels to the Multnomah County District Attorney's office to prosecute the two misdemeanors and felony written up by Taylor.  After reviewing the videotape of the entire incident supplied by Hoofnagle's counsel, the district attorney's office dismissed the case in the interests of justice.

20.    As a result of defendants' conduct, Hoofnagle suffered physical and emotional

harm, as well as economic impacts, such as the cost of medical care and loss of income.

Hoofnagle's right kneecap injury is not healing properly as of the date this Complaint is filed, and continues to cause him significant pain and suffering.  It also limits his mobility, and thus his employability.  Hoofnagle's orthopaedist cannot rule out that he may have had a bipartite right patella, an asymptomatic pre-existing congenital condition.  He may need future surgery. Whether he will suffer permanent damage beyond increased susceptibility to the early onset of arthritic change is not yet known.

## V

## FIRST CLAIM FOR RELIEF

### (Section 1983 - 1st Amendment Violation - Free Speech and Assembly)

### Count 1: Individual liability of Defendants Taylor and Smith

21.     As applicable, plaintiff incorporates the above.

22.     As described above, Taylor and Smith violated Hoofnagle's rights to free speech and peaceful protest.  Their conduct violated the First Amendment to the United States Constitution.

### Count 2: Municipal and County Liability – Unconstitutional Training Policy

23.     The City of Portland and County of Multnomah have a policy, custom, and/or practice of training their members to violate people's First Amendment rights as described above. Defendants City and County were deliberately indifferent to Hoofnagle's rights and caused or contributed to the cause of his injuries and the violation of the First Amendment to the United States Constitution.

### Count 3: Municipal and County Liability – Ratification

24.     As described above, the City of Portland and County of Multnomah ratified

defendant Taylor and Smith's acts and the basis for said acts, that is, City of Portland and County of Multnomah policymakers knew of and specifically approved of the individual defendants' acts.

25.     As a result of the above, plaintiff is entitled to an award of economic and non-economic damages as well as ordinary costs against defendants in amounts to be determined at trial.

26.     As a result of the above, plaintiff is entitled to an award of punitive damages against Taylor and Smith in an amount to be determined at trial.

27.     Hoofnagle is entitled to an award for his attorney fees and litigation expenses/costs against defendants pursuant to 42 USC § 1988.

**VI**

**SECOND CLAIM FOR RELIEF**

**(Section 1983 - Fourth Amendment Violation - Unreasonable Force)**

**Count 1: Individual Liability of Defendant Taylor and Smith**

28.     As applicable, plaintiff incorporates the above.

29.     As described above, Taylor and Smith violated Hoofnagle's right not to be subjected to unreasonable force causing injury.  Taylor's and-Smith's conduct violated the Fourth Amendment to the United States Constitution.

**Count 2: Municipal and County Liability – Unconstitutional Training Policy**

30.     The City of Portland has a policy, custom, and/or practice of training PPB members to violate people's Fourth Amendment rights as described above. Defendants City and County were deliberately indifferent to Hoofnagle's rights and caused or contributed to the cause of his injuries and the violation of the Fourth Amendment to the United States Constitution.

**Count 3: Municipal and County Liability – Ratification**

31.     As described above, the City of Portland ratified defendant Taylor's and Smith's acts and the basis for said acts, that is, City of Portland and County of Multnomah policymakers knew of and specifically approved of the individual defendants' acts.

32.     As a result of the above, Hoofnagle is entitled to damages, costs and fees as set forth in paragraphs 20 and 25-27 against the Taylor and Smith; and all but punitive damages against the City and County.

## VII

## THIRD CLAIM FOR RELIEF

**(Section 1983 – Fourteenth Amendment Violation – Unreasonable Conduct and/or Conduct Which Is Arbitrary, Deliberately Indifferent and/or Shocks the Conscience)**

33.     As applicable, plaintiff incorporates the above.

34.     As described above, Taylor and Smith violated Hoofnagle's Fourteenth Amendment rights because his conduct was unreasonable and/or arbitrary, deliberately indifferent and/or shocking to the conscience.

35.     As a result of the above, Hoofnagle is entitled to damages, costs and fees as set forth in paragraphs 20 and 25-27 above.

## VIII

## FOURTH CLAIM FOR RELIEF

**(State Law Claim - Assault and Battery)**

36.     As applicable, plaintiff incorporates the above.

37.   Taylor and Smith acted to cause a harmful or offensive contact with plaintiff and in fact caused harmful contact with plaintiff.

38.  As a result of the above, Hoofnagle is entitled to damages as set forth in paragraphs 20 and 25-27 above.

## IX

## FIFTH CLAIM FOR RELIEF

### (State Law Claim - Intentional Infliction of Emotional Distress)

39.  As applicable, plaintiff incorporates the above.

40.  Taylor intended to inflict severe emotional distress on the plaintiff by engaging in the following acts:

a.  Punishing Hoofnagle by shooting him multiple times with FN303 projectiles fired from a 40 MM less lethal launcher;

b.  Roughly throwing him to the pavement in anger when Hoofnagle was not resisting arrest or trying to escape;

c.  Arresting Hoofnagle on false pretenses causing him to be incarcerated overnight;

d.  Lying about the facts in his official police report to buttress probable cause for the arrest and cover up and/or justify the use of excessive force;

e.  Lying about the facts in his official police report and on the Use of Force form, including but not limited to misrepresenting the areas of injury as being confined to the lower extremities, so as not to have violated the Stipulated Additional Temporary Restraining Order referred to above and PPB Use of Force policy 1010.

41.  As a result of Taylor's actions, Hoofnagle suffered severe emotional distress that was substantial and enduring.

42.  Taylor's conduct was an extraordinary transgression of the bounds of socially

tolerable behavior.

43.  As a result of the above, Hoofnagle is entitled to damages as set forth in paragraphs 20 and 25-27 above.

## X

### SIXTH CLAIM FOR RELIEF

### (State Law Claim - Wrongful Arrest)

44.  As applicable, plaintiff incorporates the above.

45.  At the time Hoofnagle was battered by a barrage of FN303's shot by Taylor and the 40 mm projectile shot by Smith, he was complying with the police directive to move northbound on SW 4th; and had engaged in no behavior that threatened injury to the officers.

46.  Defendants lacked probable cause to arrest Hoofnagle.

47.  As a result of the above, Hoofnagle is entitled to damages as set forth in paragraphs 20 and 25-27 above.

**WHEREFORE**, plaintiff prays for relief from the Court as follows:

1.     Assume jurisdiction in this matter over plaintiff's claims;

2.     Award plaintiff economic and non-economic damages against defendants in amounts to be determined at trial in accordance with the allegations set forth above;

3.     Award plaintiff punitive damages against the individual defendant Taylor in an amount to be determined at trial in accordance with the allegations set forth above;

4.     Award plaintiff his attorney fees and litigation expenses/costs against defendants in accordance with the allegations set forth above; and

/////////

/////////

5.      Grant such other relief as may be just and proper.

PLAINTIFF DEMANDS A JURY TRIAL.

DATED:  June 3, 2021.

> /s/  James E. McCandlish
> J. Ashlee Albies, OSB No. 051846
> James E. McCandlish, OSB No. 752469